(C. D. 885)

Amerioan Mail Line, Ltd., et al. *v.* United States

## United States Customs Court, Third Division

(Decided October 25, 1944)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *William J. Vitale*, special attorneys), for the defendant.

### Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The controversy here arises by reason of the collector's assessment of duty at 50 per centum ad valorem, as provided for in section 466 of the Tariff Act of 1930, upon the cost of repairs made in foreign countries upon several vessels of the plaintiffs, who claim that no duty is assessable under said act. The vessels involved in this action consist of the following: *President Jefferson, President Jackson, President McKinley, President Grant, Grays Harbor, Everett, Bellingham, Tacoma, Shelton,* and *Olympia.*

A clerk in the marine division of the United States Customs at Seattle, in charge of documentation of vessels, testified for the plaintiffs that the *President Jefferson* was documented under certificate of registry, Form No. 1265, to engage in the foreign trade, and that such certificate does not provide that said vessel may engage in the foreign or coasting trade, and that each of the other vessels here involved was similarly registered.

A copy of a blank form of license, No. 1273, entitled "Consolidated Certificate of Enrollment and License (Northern, Northeastern, and Northwestern Frontiers of the United States, Otherwise than by Sea)" permitting vessels "to be employed in carrying on the COASTING AND FOREIGN TRADE for ONE YEAR from the date hereof, and no longer," was admitted in evidence as exhibit 1 illustrating the documentation required for vessels in the "foreign or coasting trade." Also admitted in evidence as exhibit 2 was a copy of a blank "Certificate of Registry" Form No. 1265, illustrative of the documentation under which the *President Jefferson* was registered, and it was agreed between counsel that the type of certificate represented by said exhibit 2 was the type under which each of the vessels at issue in this case was registered.

The deputy collector in charge of the marine division in Seattle testified for the Government that he supervised the documentation of vessels; that exhibit 2 was the type of certificate under which a vessel is entitled to unlimited trade, either foreign or coastwise; that the certificate is issued for an indefinite term; that when engaged in domestic trade a registered vessel, because of her right to "go foreign," would have to enter at the customhouse in every port of arrival, whereas enrolled or licensed vessels are entitled to proceed within the

waters of a customs district "carrying strictly domestic cargo, without being entered or carried at the custom house"; that all of the various, certificates, licenses, and enrollments constitute the documentation of vessels under the laws of the United States; and that enrolled or licensed vessels are not entitled to engage in foreign trade, except when operating under Form 1273, represented by exhibit 1, that being the only exception. The witness further testified without contradiction that a vessel under registry such as exhibit 2 could engage in the foreign trade exclusively, or the foreign or coasting trade at the same time, or exclusively in the coasting trade.

At the close of the trial the Government moved to dismiss the protests on the ground that the issues raised therein have been judicially determined by the courts. The court reserved decision on the motion for action by the division. Motion to dismiss is denied.

Section 466 of the Tariff Act of 1930, provides as follows:

SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, *or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country;* and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as *herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited.* For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

"SEC. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; or

"(2) That such equipments or parts thereof or repair parts or materials, were manufactured or produced in the United States, and the labor necessary to install such equipments or to make such repairs was performed by residents of the United States, or by members of the regular crew of such vessel,

then the Secretary of the Treasury is authorized to remit or refund such duties, *and such vessel shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited.*" [Italics not quoted.]

The plaintiffs contend that the foregoing section limits assessment of duty to the cost of repairs or equipments for such vessels as are documented under the laws of the United States "to engage in the foreign or coasting trade" or to vessels "intended to be employed in such trade," and that the vessels in question were neither documented to engage in the foreign or coasting trade within the meaning of said section, nor so intended. Not being subject to duty under said section the plaintiffs contend that the cost of such repairs are not dutiable under the Tariff Act of 1930.

It is further contended that the vessels to which section 466 refer consist exclusively of such as are documented to engage in either the foreign or the coasting trade on the northern, northeastern, and northwestern frontiers of the United States, otherwise than by sea, as provided for in Title 46, United States Code, section 258, reading as follows:

### 258. Enrollment of vessels on frontiers.

Any vessel of the United States, navigating the waters on the northern, northeastern, and northwestern frontiers, otherwise than by sea, shall be *enrolled and licensed* in such form as other vessels; *such enrollment and license shall authorize any such vessel to be employed either in the coasting or foreign trade on such frontiers, and no certificate of registry shall be required for vessels so employed. Such vessel shall be, in every other respect, liable to the regulations and penalties relating to registered and licensed vessels.* (R. S. §4318; Feb. 27, 1877, ch. 69, § 1, 19 Stat. 251.) [Italics not quoted.]

It is further contended that the language of section 3114 of the Revised Statutes which extended only to vessels enrolled and licensed to navigate the frontier waters "otherwise than by sea," was amended by section 466 of the Tariff Act of 1922 by changing the language *enrolled and licensed* to *documented* so as to require the collection of duty upon the cost of repairing registered vessels operating in Puget Sound waters, and that it was never intended to so extend the language as to require the collection of duty upon the cost for repairs or equipments of registered vessels not engaged in trade with Canada.

It is further contended that section 466, *supra*, in including the language—

* * * and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; * * *.

indicates that it was the intention of Congress to limit the application thereof to such vessels as are enrolled or licensed under section 258, *supra*, because the registry of a vessel is not renewed unless there is a change in ownership, tonnage, etc., and then a new registry is issued, whereas a license or enrollment is renewable every year. Therefore

Congress in the foregoing quoted portion of section 466, *supra*, was not referring to vessels under registry such as are here involved. The plaintiffs likewise point out that the provisions of section 466, *supra*, refer particularly to—

\* \* \* a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade \* \* \*

and that the vessels here in question are merely "registered" without indicating therein whether they were to engage in the foreign or the coastwise trade, which is in accordance with the "Certificate of Registry," exhibit 2, and United States Code, Title 46, Chapter 2, section 25. On the other hand enrolled and licensed vessels under section 258, *supra*, are documented, so plaintiffs contend, to engage in the foreign or coasting trade, the plaintiff referring particularly to the statement in exhibit 1, reading:

*License is hereby granted* for said vessel *to be employed in carrying on the coasting and foreign trade* for one year from the date hereof, and no longer. [Italics not quoted.]

The Government first attacks the court's jurisdiction to hear and decide the cases upon the merits, separating the protests into 12 groups, contending that 8 groups should be dismissed *sua sponte* and that 4 should be overruled. As to the 8 groups, it is contended that the court should dismiss the same because duty was assessed in accordance with the decision of the Secretary of the Treasury. The Government cites *Waterman Steamship Corp.* v. *United States*, 30 C. C. P. A. 119; C. A. D. 223, and claims it to have involved identical issues, which it was held that this court was without authority to adjudicate, to wit, claims falling within the purview of section 3115, *supra*.

In the *Waterman* case, *supra*, our appellate court, in affirming this court, held that section 466, amending section 3115 of the Revised Statutes, did not confer upon this court the jurisdiction to review the action of the Secretary of the Treasury in determining whether the cost of equipment purchased for, or repairs made to, a vessel compelled by stress of weather or other casualty to put into a port and make such repairs or replacements to secure the safety and seaworthiness of the vessel so as to enable her to reach her port of destination, should be remitted or refunded.

An inspection of the protests before us discloses that such issue arises only in the case of *Tacoma Oriental Steamship Co.* v. *United States*, protest 649149–G, and comprises one of the claims in *American Mail Line* v. *United States*, protests 27754–K to 27757–K, inclusive. Under authority of the *Waterman* case, *supra*, protest 649149–G is dismissed, and the claim under section 3115 in protests 27754–K to 27757–K, for the reasons stated, will not be considered. As to all

other protests before us, the Government's contention is without foundation.

The remainder of the protests in this case, divided into four groups, the Government contends, should be overruled because they present various claims previously decided by the courts adversely to the plaintiffs' contentions, or because of the plaintiffs' failure to present sufficient evidence. We are of the opinion that the Government's contentions are not well taken.

In all of the cases before us the Government further contends that the protests should be dismissed because, if reasonably construed, they do not distinctly and specifically set forth the reasons for the objections made to the liquidations such as would include a claim that the vessels at issue were neither documented to engage in the foreign or coasting trade, nor intended to be employed in such trade, within the meaning of section 466, *supra.*

In this connection, as in all cases arising because of the assessment of 50 per centum ad valorem duty under section 466, the claim is that the cost of repairs and equipments supplied to vessels are not such as come within the provisions of section 466 or any other section of the tariff act. The issues before this court in cases of such character are, first, whether or not the 50 per centum duty was assessed upon the cost of actual repairs or equipments, that is, whether the cost was for repairs or equipments within the meaning of those terms; and second, whether the repairs or equipments upon which duty was levied were performed on, or supplied to, such vessels as are contemplated under the law. Arguments by plaintiffs as to such facts as in their opinion would exclude the vessels from the class under which the cost of repairs or equipments thereon are dutiable are immaterial to the sufficiency of the protests. Clearly, the claim that the protests should be dismissed for such reason should be and hereby is denied. The arguments made at the trial to sustain a claim for an exemption from the levy here complained about are not a part of the protest pleadings, and the Government's claim for dismissal of the protests for such reason is denied.

In reply to plaintiffs' contention upon the merits the Government points out that the record discloses that the vessels herein were actually engaged in foreign trade at the time the repairs were made and it is argued that a reasonable construction of section 466, *supra,* compels a conclusion that vessels engaged in either the foreign or coasting trade, other than on northern, northeastern, and northwestern frontiers, must first obtain a certificate of registry, and that such a conclusion is supported by the legislative history of the provision, judicial decisions, the customs regulations, and a long-continued practice, and when other statutes in *pari materia* are read in conjunction with section 466, *supra,* no other conclusion can be reached.

The Government relates the fact that prior to the Tariff Act of 1922 sections 3114 and 3115 of the Revised Statutes limited the levy of duty upon equipments and repairs of vessels made in a foreign country to such as were "enrolled and licensed under the laws of the United States to engage in the foreign and coasting trade on the northern, northeastern, and northwestern frontiers of the United States or a vessel intended to be employed in such trade." (Act of July 18, 1866, Chapter 201, section 23, Vol. 14, page 183, of the Statutes at Large); that the House bill did not contain section 466 but it was offered as an amendment (Congressional Record, August 15, 1922, 67th Congress, 2d Session, Vol. 62, page 11373), and that it was indicated in the Conference Report of the Managers of both Houses (Amendment No. 1895) that the purpose of the amendments to the Revised Statutes was "so that it will be applicable to all vessels documented under the laws of the United States engaged in the foreign or coasting trade" instead of only to certain vessels in a specified trade.

The Government therefore contends that the foregoing expression of legislative intent furnishes irrefutable evidence that the amendments to section 3114 were particularly for the purpose of rendering dutiable repairs made upon, or equipments purchased for, *all* vessels engaged in the foreign *and* coastwise trade, and that the amended language of section 3114, *supra*, broadened the scope of the section by removing any limitations under existing law as to the vessels included therein.

The Government further contends that prior to the passage of the Tariff Act of 1930 this court and our appellate court held the cost of repairs made upon registered vessels in foreign ports subject to a duty of 50 per centum ad valorem under section 466, *supra*, and that Congress, presumed to have knowledge of such decisions, reenacted section 466 without any changes pertinent to the controversy herein. See *Kelly* v. *United States*, 17 C. C. P. A. 30, T. D. 43322.

We are inclined to agree with the Government in respect to the interpretation of the statute in question. An inspection of exhibits 1 and 2 discloses that the former permits vessels through "*enrollment and license*" to be employed in carrying on the *coasting and foreign trade for one year* in certain specified areas, while the latter is a "Certificate of Registry" and does not specify either the area of operation of the vessel or the character of trade in which it is engaged. Nor does it indicate the period of time covered by the registry. However, the uncontradicted testimony of Government witness supplies such deficiencies, to wit, a vessel is registered for an indefinite time; such vessel is entitled to unlimited trade either foreign or coastwise at the same time; or foreign trade alone; or the coasting trade exclusively.

It is admitted that a documented vessel includes registered vessels as well as those which have been enrolled or licensed, or both.

A review of the legislative proceedings, during the amendments to section 466 of the Tariff Act of 1922 at the time the Tariff Act of 1930 was being drafted in the Congress, is convincing that Congress was well aware of the decisions upon the subject of ships' repairs, and the discussions there considered resulted in certain amendments to section 466 in the Tariff Act of 1930. See "Tariff Readjustment—1929," Vol. XVI, pages 9755, 9801, 10291 to 10298, inclusive.

We are of the opinion, however, that the language of the provision, when read in connection with similar provisions in the act relative to vessels, is clear and unambiguous and cannot reasonably be construed in the manner urged by plaintiffs.

True, under section 258, *supra*, vessels navigating the northern, northeastern, and northwestern frontiers, otherwise than by sea, are authorized under enrollment and license to be employed in either the coasting or foreign trade on such frontiers without a certificate of registry or a license. In contending that the phrase—"the foreign or coasting trade" referred to in section 466, *supra*, describes such single document and is not intended to refer to a document entitling vessels to engage in the foreign trade or the coasting trade generally, plaintiffs are clearly going beyond the plain import of the words in section 258, *supra*. Authorization is given in section 258, *supra*, to vessels to engage in either the coasting or foreign trade on specified frontiers under a documentation entitled "Consolidated Certificate of Enrollment and License." (See exhibit 1.) Under such documentation vessels may engage in the two trades in the areas specified in the same manner as if they were documented under a certificate of registry or under a license, the document permitting a vessel to be employed in carrying on the COASTING AND FOREIGN TRADE and not the coasting or foreign trade. The significance in the wording becomes apparent when considering other sections of the tariff act. It will be noted that section 258, *supra*, provides specially that "*enrolled and licensed*" vessels, "shall be, in every other respect, liable to the regulations and penalties relating to registered and licensed vessels," thus indicating that vessels under such special documentation are entitled to enjoy the status accorded to licensed vessels or to registered vessels.

Section 466, *supra*, amending section 3115 of the Revised Statutes, as amended by section 466 of the Tariff Act of 1922, in providing:

* * * such vessel shall not be liable to forfeiture, and no *license* or *enrollment and license*, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for *under the provisions of this and the preceding sections*, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited." [Italics not quoted.]

does not inferentially or otherwise, in imposing such penalties, restrict the provisions of said section to licensed or enrolled and licensed vessels. Section 3114, as amended, *supra*, provides that a vessel documented under the laws of the United States to engage in the foreign *or* coasting trade, if the master fails to report and make entry and pay duties upon repairs and equipments, shall be seized and forfeited. Section 465, the preceding section of the Tariff Act of 1930, provides that if the master of any vessel of the United States documented to engage in the *foreign and coasting trade* on the northern, northeastern, and northwestern frontiers of the United States, fails to file a statement of the cost of all repairs to and all equipment taken on board such vessel, the master of such vessel shall be liable to a fine of not less than $100 and not more than $500 or to imprisonment for not more than 2 years, or both. Therefore provision is made in the foregoing sections for the imposition of penalties, first, of seizure and forfeiture in the case of a *registered vessel* engaged in the foreign or the coasting trade, or both, where a master fails to report the cost of repairs and equipments purchased abroad (section 466, section 3114, as amended); second, of seizure and forfeiture in the case of a *licensed vessel* where the master refuses to take oath, or takes it falsely (section 466, section 3115, as amended); third, of a fine imposed against the master, or imprisonment, or both, in the case of a vessel documented through *enrollment and license* to engage in the *foreign and coasting* trade on the northern, northeastern, and northwestern frontiers of the United States, where the master fails to file a statement of cost of repairs etc. (section 465); and fourth, in the case of an *enrolled and licensed* vessel where the master refuses to take oath, or takes it falsely, the vessel may be seized and forfeited (section 466). In other words, section 465 provides for penalties to be imposed against the masters of ships documented to engage in a foreign and coasting trade in a specified area. Section 466 provides for penalties to be imposed upon ships documented to engage in the foreign or coasting trade and further provision is made that a collector shall be satisfied as to the disclosure of expenditures made for repairs or for the purchase of equipments upon an enrolled and licensed, or a licensed vessel, before renewal of such document, or in certain circumstances the collector is authorized to seize and forfeit a vessel so documented.

We fail to find any ambiguity in these sections or any need to resort to the legislative intention leading to the enactment of the same. Clearly, section 466 pertains to vessels having every character of documentation, and includes the vessels here before us. The phrase "foreign or coasting trade" in section 466, *supra*, in our opinion, under the plain import of the words themselves, or as read in connection with other sections of the tariff act, indicates a legislative

intention to include therein vessels engaged exclusively in the foreign trade, other than upon the northern, northeastern, and northwestern frontiers, as well as the foreign trade upon such frontiers, or in the coasting trade, or both the foreign or coasting trade, and the vessels referred to as "documented" include such as are under certificate of registry, as well as such as are licensed or enrolled and licensed. As Government counsel puts it, section 466, *supra*, is intended to include *all* vessels. The statute itself furnishes the best means of its own exposition. See *Pulaski Co.* v. *United States*, 6 Ct. Cust. Appls. 291, T. D. 35508.

The protests here before us arose because of the imposition of duties under the provisions of section 466 of the Tariff Act of 1930. The provisions in question are identical in language with those contained in section 466 of the Tariff Act of 1922. So far as the provisions are held to comprehend that duty shall be assessed upon the cost of repairs etc., made upon a vessel documented under the laws of the United States engaged in the foreign or coasting trade or a vessel intended to be employed in such trade, our appellate court in *Kelly* v. *United States*, 17 C. C. P. A. 30, T. D. 43322, sustained this court in construing section 466 of the Tariff Act of 1922 as sufficiently broad enough to warrant an assessment of duty upon the cost of maintenance painting upon the *President McKinley*, performed in a Chinese port, the vessel being documented under the laws to engage in the foreign trade. That case was decided prior to the enactment of the Tariff Act of 1930 and the Congress is presumed to have knowledge that the courts had construed section 466 of the Tariff Act of 1922 as pertaining to vessels documented to engage in the foreign trade generally, and had such construction not conformed with the intention of Congress it easily could have changed the language when rewriting the provision in the Tariff Act of 1930. Certainly in the previous section 465, the legislators had no difficulty in making clear that the vessels referred to therein were such as were "documented to engage in the foreign and coasting trade on the northern, northeastern, and northwestern frontiers," thus clearly defining and limiting the vessels to which the provision related. The doctrine of legislative approval of judicial construction of the provision in question is clearly applicable. Because of the many lines of argument raised by the plaintiffs necessitating a reference thereto in this opinion and various Government urgings that the protests be dismissed rather than decided upon the merits, this opinion has become unduly long. However, the plaintiffs admit that the cost here in question pertains to repairs or to such cost as has been held by the courts to be subject to the assessment of 50 per centum ad valorem duty under section 466, and it therefore becomes unnecessary to treat with such matters here. For the reasons stated, judgment will be entered in favor of the Government.